ADAM WANG, Bar No. 201233
LAW OFFICES OF ADAM WANG
12 South First Street, Suite 613
San Jose, CA 95113
Tel: (408) 292-1040
Fax: (408) 416-0248

Attorney for Plaintiffs
Eva Romero and Rodolfo Ruffelas

FILED

2008 SEP -3 P 3: 50

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA, S.J.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA ROMERO and RODOLFO RUFFELAS, | Case No.: C07-5244 HRL |
| Plaintiffs, | PLAINTIFFS' TRIAL BRIEF |
| vs. | |
| MANGLAR BHULLAR and JASWINIDER BHULLAR, and DOES 1-10, | |
| Defendants, | |

## I.   INTRODUCTION

This case is about an employer who knowingly and continually violated the law; An employer who repeatedly defies the mandate of the law and believes they can beat the law by falsifying the time cards and by avoiding their legal duty to keep and maintain accurate employment records.

As will be shown at trial, Defendants scheduled Plaintiffs to work substantial amounts of overtime, but only paid them only a flat rate lower than the minimum wage. Evidence will show Defendants never maintained any time records whatsoever, for the majority of Plaintiffs' employment. Any records that exist were created toward the end of Plaintiffs' employment and then only after Defendants settled one lawsuit by four former employees for unpaid overtime[1] and were sued again by the Plaintiffs in this case.

---

[1]    The case Cortes, et al v. Bhullar, et al. (C07-01233 RS).

**PLAINTIFFS' TRIAL BRIEF**
RAFFELAS, et al. v. BHULLAR et. al.

1                                    Case No.  C07-5244 HRL

1   Defendants paid Plaintiffs for a fixed period of hours each time period, regardless of how

2   many hours actually worked. Defendants would alter the records to reflect only a portion of

3   hours worked so that payroll records would not show neither any overtime nor the total number

4   of hours worked. Because of this, Plaintiffs received no overtime pay and were paid a sub-

5   minimum wage.  Highlighting the incredibly egregious nature of Defendants' behavior, evidence

6   will show that even *after* Defendants were haled into to court for the exact same behavior in

7   regard to other employee's, Defendants continued these illegal practices with regard to Plaintiffs

8   without restraint.

9   In their defense, Defendants rely solely on clumsily fabricated factual assertions that not

10  only sound suspicious, but are directly contradicted by both the very limited documentation

11  available in this case and by Defendants' own testimony.  Defendants testified that they did not

12  hire Eva to work on the lunch truck until February 1, 2006, because the truck was not issued a

13  permit to sell food until then, while the documents showed that Defendants obtained all

14  necessary permits to operate lunch truck as early as November 2005.  In an attempt to hide the

15  fact that they did not bother to maintain any employee time records, Defendants testified that

16  they had implemented a system requiring employees to punch time cards as they arrived to and

17  left from work. However, when asked to produce these records, defendants claim that all the time

18  cards were stolen by the Plaintiffs. Furthermore, Defendants' testimony about how time cards

19  were created and maintained is replete of inconsistencies.

20  Testimony about how payroll was processed, including for what hours employee's were

21  paid, is equally unclear. Because of poor to non-existent record keeping, there exists little

22  documentation to either support the Defendants incredible account of their payroll methods.

## II.     THE PROCEDURAL BACKGROUND AND NATURE OF CLAIMS

23  Defendants Jaswinder and Manglar Bhullar, doing business as Happy Hollow Market

24  ("Happy Hollow"), own and operate a popular mini-market in San Jose.

25  On October 12, 2007, Rodolfo Ruffelas and Eva Romero filed their Complaint.  In the

Complaint, Plaintiffs claim that they were employees of Happy Hollow and that while employed

---

**PLAINTIFFS' TRIAL BRIEF**
<u>RAFFELAS, et al. v. BHULLAR et. al.</u>

Case No.  C07-5244 HRL

by the Defendants, they worked in excess of 8 hours a day and 40 hours a week, but were paid only a flat salary without receiving minimum wage or required overtime pay. Plaintiffs seek unpaid overtime and minimum wages under both Fair Labor Standards Act, 29 U.S.C. § § 207(a) & 216(b) ("FLSA") and California Labor Code § 1194, and liquidated damages for unpaid overtime under FLSA, 29 U.S.C. § 216(b), and California Labor Code § 1194(b).

Plaintiffs also claim that they were not given the required 30-minute undisturbed meal break for every 5 hours worked, in violation of California Industrial Welfare Commission Order No. 5-2001, found at 8 CCR § 11170, subsection 9, California Labor Code § 2226.7 and § 512. They seek unpaid meal break premiums for 1 missed meal break a day, each missed meal break subjecting Defendants to one extra hour of pay at the plaintiff's regular rate of pay. *See Cal. Labor Code § 226.7.*

Plaintiffs also seek waiting time penalties under Cal. Labor Code § 203, which requires that the employer to pay up to 30 days wages if the employer fails to pay the employee all wages due upon the employee's termination of employment.

Finally, Plaintiffs seek restitution under Cal. Business & Professions Code § 17203 for unpaid minimum wages, overtime wages, and meal period premiums.

## III.    FACTS

### A.    EMPLOYMENT HISTORY FOR EVA ROMERO:  EVA WAS EMPLOYED FROM NOVEMBER 2005 TO SEPTEMBER 2007.

1.    Eva Romero will present credible evidence that she started employment with Defendants' in November of 2005.

At trial, Eva will show that she began employment with the Defendants sometime in November 2005. Defendants had an open application process by which individuals could apply for work and would be called as selected and as needed. Manglar Bhullar Depo. Vol. I, (Page 16:11 to 16:25). Eva Romero submitted an application for employment with Defendants on May 10, 2005. See Exhibit 1. She was told that Happy Hollow Market was in the process of applying for a license for a lunch taco truck, and would need additional employee when that process was

complete. Manglar Bhullar Depo. Vol. I, (Pages 18:15 to 19:2). In or about November 2005,
Defendants finally secured the necessary licenses to operate the lunch taco truck. See Exhibits II
& III. At or near to this time, the Defendants then contacted Eva to inform that her help was now
necessary to staff the lunch truck. Eva Romero accepted defendants offer for employment and
began working in the lunch truck in November of 2005.

2.    Defendants' assertion that Eva Romero was not employed by Defendants until
February of 2006 is not supported by any credible evidence.

Defendants contend that Eva Romero did not begin working for the Happy Hollow taco
truck until February of 2006. Manglar Bhullar Depo. Vol. I, (Page 15:20 to 15:23). In support of
this proposition they provide payroll records that show that Eva Romero received no paycheck
until February 2006, and as such claim, by inference, she was not employed until this time.
Manglar Bhullar Depo. Vol. I, (Page 34:7 to 34:11). However, when asked why Defendants did
not hire Eva to operate the lunch truck in November 2005, Defendant Mangal Bhullar stated that
in November 2005, the lunch truck still required substantial renovation and repair work in order
to obtain a permit from the Health Department. Manglar Bhullar Depo. Vol. I, (Page 171:1 to
171:6). To wit, in order to gain Health Department approval, he claimed that he needed to put in
at least a grill, heater, sinks, floor, steamer, a fridge, gas tank and doors. See Mangal Bhullar
Depo., Vol. II., at (Page 170:10 to 170:15) and (Pages 180:8 to 183:2). After much wrangling at
deposition, Mr. Bhullar himself admitted that all of necessary work had to be completed before
he was issued the permit to operate the lunch truck. Mangal Bhullar Depo., Vol. II, (Pages
191:16 to 193:1). Contrary to his earlier testimony, that they did not hire Eva in November 2005
because the work had not been done, the work necessarily must have been completed in
November of 2005, because Defendants later produced a copy of the permit issued in November
2005. See Exhibit III.

There is no dispute between the parties that Eva Romero's employment relationship with
defendants was terminated on September 17, 2007.

**PLAINTIFFS' TRIAL BRIEF**
RAFFELAS. et al. v. BHULLAR et. al.

4                          Case No. C07-5244 HRL

B.    **EMPLOYMENT HISTORY FOR RODOLFO RUFFELAS: RODOLFO RUFFELAS WAS EMPLOYED FROM MID JANUARY 2006 TO AUGUST 2007.**

In the same manner as Eva, Rodolfo Ruffelas submitted an application for employment to defendants in early January of 2006. Plaintiffs' Exhibit IV. Plaintiff accepted an offer for employment and began working for defendants in late January of 2006. Manglar Bhullar Depo. Vol. I, (Page 28:21 to 28:23). Plaintiff's duties were to cook and prepare food, clean the kitchen area, and engage in other miscellaneous duties related to the operation of defendants' store and lunch counter. Manglar Bhullar Depo. Vol. II, (Pages 85:12 to 86:6).

Starting mid-January 2006, Rodolfo was paid partly in check. In March 2007, Defendants informed Rodolfo that they received a notice from IRS or Social Security Services that the social security number or tax identification number under which Rodolfo was reported taxes did not match the name to whom the number was assigned. See Jaswinder Bhullar Depo., (Pages 97:3 to 98:11). Defendants instructed Rodolfo to obtain a valid tax identification number, and informed him that they would pay him in cash until he received a valid identification number. In fact, Mangal Bhullar apparently told Rodolfo that everything would be "Okay" and "not to worry" about the social security letter. See Jaswinder Bhullar Depo., (Pages 98:24 to 99:11). Meanwhile, Rodolfo continued to work for the Defendants up until August of 2007 when Defendants finally decided cut Rodolfo's work hours substantially, resulting in a reduction in his pay. At this point, Rodolfo was forced to quit his employment with Defendants as he simply was unable to subside on the wages from his greatly reduced work schedule.

Defendants do not dispute that they received such a non-matching letter, but contended that they fired Rodolfo upon the receipt of such letter. In support, Defendants point to Rodolfo's last check dated March 2007. However, when asked to produce the non-matching letter from IRS or Social Security, Defendants stated, through their attorney, that such non-matching letter "is the letter to Mr. Ruffelas from the IRS or Social Security. [Defendants] mailed it back to the sender in April of 2007 and did not keep a copy." See Exhibit 5. This is a completely false statement. First, a non-matching letter should be sent to the employer, rather than employee.

---

PLAINTIFFS' TRIAL BRIEF
RAFFELAS, et al. v. BHULLAR et. al.

Case No. C07-5244 HRL

1  Second, it is unlikely that IRS or Social Security Service would mail correspondences addressed

2  to Rodolfo to Defendants' address.

3        In light of the incredibility of Defendants' statements concerning the circumstances

4  surrounding why Rodolfo's payroll stopped in March 2007, the Court should find that the

5  preponderance of evidence supports Rodolfo's position with respect to the length of his

6  employment.

7        C.    **DEFENDANTS PAYROLL RECORDS LACK ANY CREDIBILITY IN ESTABLISHING
             WHEN EACH PLAINTIFF'S EMPLOYMENT STARTED OR ENDED IN LIGHT OF
8            THEIR PRACTICE OF PAYING EMPLOYEES IN CASH**

9        As stated above, Defendants have produced what are purported to be Eva and Rodolfo's

10  payroll records to establish that Eva did not start her employment with Defendants until February

11  1, 2006 and that Rodolfo ended his employment in March 2007.  Defendants contend that had

12  Plaintiffs worked beyond the respective period, their employment would have been recorded in

13  their payroll records.  However, this argument is fundamentally flawed.  Defendants have not

14  established that they had faithfully followed the requirements of law to maintain accurate

15  employment records and to accurately report employment taxes.  Rather, the evidence shows that

16  Defendants have completely failed to maintain employment records and have failed to withhold

17  and report taxes on employees' wages, not only with respect two Plaintiffs in this case, but also

     with respect to other employee(s).

18        D.    **DEFENDANTS HAVE FAILED TO MAINTAIN COMPLETE AND ACCURATE
             RECORDS OF PLAINTIFFS EMPLOYMENT INCLUDING BUT NOT LIMITED TO
19            TIME RECORDS, EMPLOYMENT DATES, AND PAYROLL RECORDS**

20        Plaintiffs will show at trial that defendants have continuously failed to keep adequate

21  records of their employment with Happy Hollow. Specifically, Defendants have repeatedly failed

22  to maintain accurate time records of Plaintiffs' working hours. Plaintiff Eva denies that, at any

23  time before the time period immediately preceding the termination of her employment, were time

24  records regularly kept by defendants. Plaintiff Rodolfo will testify that during the month of

25

**PLAINTIFFS' TRIAL BRIEF**
<u>RAFFELAS, et al. v. BHULLAR et. al.</u>
Case No.  C07-5244 HRL

December 2006, he was asked to punch in and punch out in the middle of his work day, and was required to go back to work without punching back in.

Defendants, conversely, maintain that Defendant Mrs. Bhullar would make work schedules on weekly basis for each and every employee. She would then inform her husband Mr. Bhullar as to what schedule every employee was on for a particular week. Jaswinder Bhullar Depo., (Page 22:1 to 22:20). At the same time, according to Defendants, employees were required to punch in and punch out on daily basis, and the time cards were collected and processed periodically. Mangal Bhullar, Depo. Vol. II, (Page 30:6 to 30:11); Jaswinder Bhullar Depo., (Page 23:11 to 23:13). However, it is clear that the testimony of Mr. Bhullar and Mrs. Bhullar about Defendants' time recording and payroll systems are not credible as they are rife with inconsistencies and contradictions.

First, Mr. Bhullar testified that he himself would collect the time cards and process the payroll based on the employees' time cards every fifteen days. Mr. Bhullar was clear in his testimony that that he personally would calculate the number of hours worked by each employee. He then testified he himself would call the bookkeeper to report the number of hours worked by each employee during the fifteen day pay period. Mangal Bhullar Depo., Vol. II, (28:6-31:23). However, when asked whether he took into account minutes shown on the time card when calculating the hours worked, he began to falter. Mangal Bhullar Depo., Vol. II, (96:9- 101:21). When pressed to provide exact details as to how he calculated an employee's hours worked when a card was blurred or unreadable, Mr. Bhullar's testimony started to fall apart. Finally he reversed his entire testimony, stating that he never calculated any time cards and never called his bookkeeper to report the number of hours worked by employees. Now, he claims that it was actually Mrs. Bhullar who did the calculation and interacted with the bookkeeper. Mangal Bhullar Depo. Vol. II, (102:22-118:5).

The claim that Defendants have maintained time cards and paid employees based on the these time cards is made less likely by the inherent inconsistencies in testimony given regarding Eva's work schedule. In his deposition, Mr. Bhullar testified that starting March 1, 2006, she

worked six hours a day from 8:00 AM to 2:00 PM, Monday to Friday, with Saturday and Sunday

off. <u>Mangal Bullar Depo. Vol. I.,</u> (164:21 -165:12). According to this schedule, Eva worked 66

hours for the pay period March 1st to 15th; and 72 hours for the pay period from March 16th to

31st. However, Eva's pay stubs show that, for these same two pay periods, she worked equally

60 hours. <u>Exhibit 6</u>. Therefore, apparently Eva was not paid accordingly to the alleged time

cards. Further, as matter of fact, Eva did not even have any time cards. Contrary to defendants

testimony, she was clearly paid a fixed sum of money each every half month, regardless of hours

worked[2]

---

[2]      For further examples Defendants' alleged time cards do not match purported payroll
records for Eva, see Exhibit 7 for May 2006 where Mr. Bhullar testified that Eva worked 66
hours for the pay period from May 1 to May 15, 2006; and 72 hours for the period May 16 to
May 31, 2006, Mangal Bhullar Depo., Vol. I., at 165:22-166:6 while the payroll indicated Eva
worked equally 60 hours.
        Exhibit 8 shows that Defendants' alleged time cards would record Eva worked 66 hours
for both pay periods from June 1 to June 15, 2006, and June 16 to June 30, 2006 (see Mangal
Bhullar Depo., Vol. I, at 166:9-167:7), while Defendants payroll records show that Eva worked
only 60 hours for these two periods.
        Exhibit 9 shows that Defendants' alleged time cards would record Eva worked 60 hours
for the pay periods from July 1 to July 15, 2006, and 66 hours for the period from July 16 to July
31, 2006 (see Mangal Bhullar Depo., Vol. I, at 167:8-13), while Defendants payroll records show
that Eva worked equally 60 hours for each of these two periods.
        Exhibit 10 shows that Defendants' alleged time cards would record Eva worked 77 hours
for the pay periods from August 1 to August 15, 2006, and 84 hours for the period from August
16 to August 31, 2006 (see Mangal Bhullar Depo., Vol. I, at 167:14-174:19), while Defendants
payroll records show that Eva worked only 70 hours for each of these two periods.
        Exhibit 11 shows that Defendants' alleged time cards would record Eva worked 77
hours for the pay periods from September 1 to September 15, 2006, and 70 hours for the period
from September 16 to September 30, 2006 (see Mangal Bhullar Depo., Vol. I, at 174:20-175:15),
while Defendants payroll records show that Eva worked only 70 hours for each of these two
periods.
        Exhibit 12 shows that Defendants' alleged time cards would record Eva worked 70
hours for the pay periods from October 1 to October 15, 2006, and 84 hours for the period from
October 16 to October 31, 2006 (see Mangal Bhullar Depo., Vol. I, at 175:16-176:15), while
Defendants payroll records show that Eva worked only 70 hours for each of these two periods.
        Exhibit 13 shows that Defendants' alleged time cards would record Eva worked 77
hours for both the two pay periods from November 1 to November 15, 2006, and from
November 16 to November 30, 2006 (see Mangal Bhullar Depo., Vol. I, at 176:16-177:2), while
Defendants payroll records show that Eva worked only 70 hours for each of these two periods.
        Exhibit 14 shows that Defendants' alleged time cards would record Eva worked 77
hours for the pay periods from December 1 to December 15, 2006, and 70 hours for the period

---

**PLAINTIFFS' TRIAL BRIEF**
<u>RAFFELAS, et al. v. BHULLAR et. al.</u>

8                        Case No. C07-5244 HRL

**E.    THE CLAIM THAT PLAINTIFFS CONSPIRED TO STEAL TIME CARDS OF DEFENDANTS' ALL EMPLOYEES IS A PURE FABRICATION**

Clearly as a strategy to avoid responsibility of failing to maintain accurate time cards and employee records as required by law, Defendants claim that Plaintiffs conspired to steal all the time cards for all employees at a unspecified time. Jaswindar Bhullar Depo., (Pages 81:17 to 82:15). However, Defendants were able to produce the time cards from May 2007 to September 2007 for Eva. Exhibit 14. This already suspect claim is made more so by the fact that this would not be the first time defendants have suffered time card theft. Immediately prior to another nearly identical action, defendants claimed to have suffered another time card theft. Both times defendants have been called out for their inaccurate and incomplete record keeping, they have coincidentally suffered a corresponding theft of time records. Jaswinder Bhullar Depo., (Pages 46:6 to 47:1). Accepting such a view of the facts creates a convenient and readily available excuse for the defendants failure to meet their legal duties. Finally, even if it is accepted as fact that the cards were stolen, such a double theft of time records serves to highlight defendants extreme lack of care in storing documents which defendants had a legal obligation to protect and preserve.

**F.    PLAINTIFFS WILL ESTABLISH THAT THEY WORKED OVER 40 HOURS PER WEEK AND 8 HOURS PER DAY, AND WERE PAID ONLY A FIXED SALARY FOR HOURS WORKED.**

At trial Plaintiffs will testify to the number of hours which they actually worked on a daily basis. Plaintiff Eva Romero, as discussed earlier, was hired to work on the defendants' newly opened lunch truck. Such work included, as stated by both Plaintiff and defendant, not only the serving of food, but food preparation,washing and chopping ingredients, cleaning and doing all work necessary to facilitate the operation of the lunch truck. Eva Romero will testify from December 16 to December 31, 2006 (see Mangal Bhullar Depo., Vol. I, at 177:5-178:17), while Defendants payroll records show that Eva worked only 70 hours for each of these two periods.

1  that as she worked at the truck and store she increasingly gained new tasks and new

2  responsibilities, working 6 days a week and 10 to 12 hours a day. Plaintiff Rodolfo Ruffelas will

3  testify that he as well put in substantial daily hours at the store. The testimony of Rodolfo

4  Ruffelas reveals that he worked 6 to 7 days a week and 10 to 12 hours per day. No overtime pay

5  is found on any of the limited available records concerning Plaintiffs employment.

6      Furthermore, because the Plaintiff were paid only a fixed number of straight-time hours

7  for these days worked the pay method functioned as a de-facto salary rather than a true hourly

8  wage. As stated above, defendant made no real effort to monitor the hours of Plaintiffs. Further,

9  they stated that they would not pay Plaintiffs for hours worked over those for which they were

10 scheduled. Almost always, the actual hours worked by Plaintiff, outlined above, were far beyond

11 those scheduled, and those hours went unpaid. Therefore, Plaintiffs were in fact salaried

12 employees receiving a fixed amount of pay per period, and were paid no money at all for all

13 overtime hours, and indeed many regular time, hours worked.

**III.    ARGUMENTS**

14  **1.    BECAUSE DEFENDANTS HAVE BOTH FAILED TO MAINTAIN ACCURATE TIME**
15  **RECORDS AND FAILED TO COMPENSATE PLAINTIFFS PER THE FLSA,**
    **PLAINTIFFS ARE ENTITLED TO DAMAGES MEASURED BY REASONABLE**
16  **INFERENCE FROM PLAINTIFFS' EVIDENCE**

17      The threshold question in the case is whether or not Plaintiffs were paid in accordance

18 with the terms of the FLSA. From the opposite side, the primary question in this case is whether

19 or not Defendants actions were in compliance with their legal duties under the FLSA. This

20 question is made difficult to answer when, as here, Defendants have not complied with the law

21 by maintaining complete and accurate payroll methods. In cases such as this "[w]here an

22 employer [has] failed to maintain accurate payroll records an employee carries his burden under

23 the FLSA if he shows he performed work for which he was improperly compensated and

24 produces some evidence to show the amount and extent of that work 'as a matter of just and

25 reasonable inference.'" Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946).

Because, under the FLSA, defendants are required to keep the records essential to the

1  adjudication of Plaintiffs claim, the rule in Anderson places the burden on Defendants to

2  disprove liability under the FLSA under certain circumstances.

3        Applying <u>Anderson</u>, the 9th Circuit Court held that, in cases where defendant has kept

4  inadequate records, "[o]nce the employee 'has proved that he has performed work and has not

5  been paid in accordance with the [FLSA],' the fact of damage is certain. The only uncertainty is

6  the amount of damage." <u>Brock v. Seto</u>, 790 F.2d 1446, 1448 (9th Cir. 1986). Therefore, once

7  plaintiffs have made a showing that Defendants (i) have not maintained proper records and (ii)

8  that Plaintiffs have worked hours for which they have been improperly compensated, Plaintiffs

9  are then entitled to prove damages by just and reasonable interference from the evidence which

10  they have presented.

          a.    <u>The records kept and maintained by the defendants in regards to all aspects of
                Plaintiffs' employment at issues in this case are inadequate.</u>

11

12

13        The available evidence indisputably shows that Defendants have failed to maintain

14  complete and accurate records as required by the law. Federal law requires an employer to

15  maintain each employee's payroll records including including each employee's name, address,

16  occupation, hours worked each day and week, wages paid and date of payment, amounts earned

17  as straight-time pay and overtime, and deductions for at least three years. <u>29 C.F.R. 516.5</u>.

18  Defendants must also maintain, for a period of two years, basic time and earnings cards, wage

19  rate tables, work schedules, order, shipping and billing records, and records of additions to or

20  deductions from wages. <u>29 C.F.R. 516.6</u>. Additionally, and importantly, defendants must also

    keep records of the hours worked by Plaintiffs each day. <u>29 CFR § 516.2(a)(7)</u>.

21        Defendants have not completely and accurately maintained any of the above mentioned

22  records. Specifically, defendants admit that the do not possess complete and accurate daily time

23  records or earning cards for either Eva Romero or Rodolfo Garcia. Furthermore, what little

24  evidence exists was admittedly penned by defendants own hand and and was produced  as little

25  more than an attempt to shield defendants from liability. The maintenance of such scant and

    inaccurate does not even come close to meeting the statutory requirements of the FLSA.

<u>**PLAINTIFFS' TRIAL BRIEF**</u>
<u>RAFFELAS, et al. v. BHULLAR et. al.</u>

1  Repeated requests by the Plaintiffs for the production of complete and accurate time records have

2  gone unheeded. If fact, said requests are most often met with defendants response that no other

3  records exist. Taking defendants at their word then, they have failed to maintain adequate records

4  as required by the FLSA.

5          b.    The evidence presented by the Plaintiffs shows unequivocally that Plaintiffs have
               worked hours for which they were not properly compensated in direct violation of

6              the FLSA.

7
        First, Defendants flat-rate semi-monthly pet scheme is inconsistent with proper payment

8  under the FLSA. Where an employer's pay scheme is such that an employees is paid for the same

9  hours for each half-month period, "such a system [is] inherently irreconcilable with the

10  requirements of the FLSA." Yue Zho v. Wang's Restaurant, 2007 WL 134441 (N.D.Cal.). This is

11  logically certain, because "not only are there different numbers of days in different half-month

12  pay periods, but also, because overtime is only due for the hours worked after the employee has

13  worked 40 hours in a given week, the number of overtime hours varies significantly for different

14  half-month pay periods." Id. Therefore, when an employee is paid a fixed amount of wages for a

15  fixed amount of hours on a bi-monthly basis, yet works a regular schedule, there will necessarily

16  be improperly compensated hours, as the pay system does not reflect the varying work hours

17  inherent in a half-month work period.

18      While there are few records which chart the details of Plaintiffs employment with

19  Defendants, Defendants have submitted the payroll records indicating the amount and manner in

20  which Plaintiffs were paid, when paid by check. These payroll records indicate that Plaintiffs

21  were paid every 15 days, and that the amount paid to Plaintiffs was essentially for a fixed

22  number of hours for each fifteen day period. Defendants' testimony only serves to confirm this

23  pay scheme. Furthermore, the evidence will show that the Plaintiffs' schedules were consistent

    from week to week. This assertion is confirmed by defendants' own testimony. Thus, as
24
    discussed above, it is certain that for at least some half-month periods Plaintiffs must have
25
    worked some hours for which they were not properly compensated.

**PLAINTIFFS' TRIAL BRIEF**
RAFFELAS, et al. v. BHULLAR et. al.
                                        12          Case No.  C07-5244 HRL

Second, the testimony of Plaintiffs shows that they worked over 8 hours a day and in excess of 40 hours per week. Plaintiff Rodolfo Ruffelas will testify he regularly worked 6 to 7 days a week, in excess of 12 hours a day. Plaintiff Eva Romero will testify that she too worked in excess of 12 hours a day, five days a week. Furthermore, other employees, outside perons, and customers of the Happy Hollow market will provide evidence confirming Plaintiffs' assertions. Therefore, even if the pay scheme employed by defendants were not inherently violative of the FLSA, the evidence put on by Plaintiffs will also be sufficient to show that Plaintiffs were not properly compensated for hours worked.

Finally, the defendant may rebut Plaintiffs evidence of non-Compliance with the FLSA only by a showing of precise evidence of Plaintiffs working hours or evidence sufficient to negate the reasonableness of Plaintiffs assertions of non-compliance with the FLSA. Brock v. Seto, 790 F.2d 1446, 1448 (9th Cir. 1986). Given the fact that Defendant has admitted that exact evidence does not exist, only evidence that could rebut Plaintiffs reasonable assertion of non-compliance would suffice. However, as discussed above, the pay system employed by Defendants was, by its very nature, out of step with the FLSA. Therefore, there is simply no piece of evidence which is capable of salvaging the Defendants inherently flawed and deeply mis-guided practices.

   c.    Plaintiffs are therefore entitled to damages measured by a reasonable
         inference based on the evidence they have presented.

Therefore, as they have shown both that insufficient records were kept by defendants and that the compensation paid by defendants was in violation of the FLSA, Plaintiffs are entitled to damages. To restate the rule set forth Anderson, as applied by the 9th Circuit, "[o]nce the employee 'has proved that he has performed work and has not been paid in accordance with the [FLSA],' the *fact* of damage is certain. The only uncertainty is the *amount* of damage." Brock v. Seto, 790 F.2d 1446, 1448 (9th Cir. 1986).

Therefore we turn to the amount of damages to be awarded to Plaintiffs. Stated plainly. Plaintiffs are entitled to those damages suggested by reasonable inference from the evidence

1    presented. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). Furthermore, "it is

2    the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the

3    **employees'** evidence ...." Brock v. Seto, 790 F.2d 1446 at 1448 citing Anderson v. Mt. Clemens

4    Pottery Co., 328 U.S. 680 at 293 (1946) [emphasis added]. Therefore, in answering the question

5    of damages the court should look to the evidence presented by Plaintiffs an make any reasonable

6    inferences about Plaintiffs working hours and employment necessary to determine the amount of

7    overtime owed to the Plaintiff.

8        Plaintiff Rodolfo Ruffelas will testify he regularly worked 6 to 7 days a week, in excess

9    of 12 hours a day. Plaintiff Eva Romero will testify that she too worked in excess of 12 hours a

10   day, five days a week. This testimony will be supported by the testimony of other workers and

11   outside parties. This evidence serves as a sufficient basis to make any necessary inferences

12   required to calculate the damages owed to Plaintiffs. In fact, even if it were the sole evidence

13   before the court, the testimony of Plaintiffs would be sufficient evidence to form the basis of a

14   reasonable inference of damages. Beliz v. W.H. McLeod & Sons Packing Co., 765 F.2d 1317, at

15   1331. Therefore, Plaintiffs are entitled to damages reasonably inferred from their testimony at

     trial.

16       This broad deference given to the Plaintiffs' evidence in proving damages is granted in

17   light of the employers' failure to keep the records essential to explicitly proving the employees'

18   claims. "[W]here the employer's records are inaccurate or inadequate and the employee cannot

19   offer convincing substitutes, ... the solution ... is not to penalize the employee by denying him

20   any recovery on the ground that he is unable to prove the precise extent of uncompensated

21   work." Brock v. Seto, 790 F.2d 1446, 1448 (9th Cir. 1986). This is because to allow "[s]uch a

22   result would place a premium on an employer's failure to keep proper records ...; it would allow

23   the employer to keep the benefits of an employee's labors without paying due compensation as

24   contemplated by the [FLSA]." Id.

25       While this may admittedly be an inexact way to measure damages, it is clear that this rule

     is both widely accepted and deeply rooted in the policy concerns surrounding the FLSA. The

---

**PLAINTIFFS' TRIAL BRIEF**
RAFFELAS, et al. v. BHULLAR et. al.

1  employer cannot be heard to complain that the damages lack the exactness and precision of

2  measurement that would be possible had he kept records in accordance with the [FLSA].... Nor is

3  [an award] to be condemned by the rule that precludes the recovery of uncertain and speculative

4  damages." Id. Even if Plaintiffs own testimony were concededly inexact and imprecise, it is still

5  sufficient, in light of the aforementioned policy concerns, to vindicate and provide a basis for

6  calculation of Plaintiffs' damages. Beliz v. W.H. McLeod & Sons Packing Co., 765 F.2d 1317, at

7  1331.

8       Given Defendants' total failure to maintain even minimal employment records in this

9  case, and the obvious and indisputable assertion that Plaintiffs performed work for which they

10  were not properly compensated, Plaintiffs should be awarded damages. With no reasonable

11  manner to rebut these assertions, the only real question before the court is the amount of

12  damages to be awarded. Concurrent with the policy concerns embodied in the FLSA, this award

13  should be made regardless of any possible imprecision in calculation. Rodolfo Ruffelas and Eva

14  Romero are unquestionably entitled to a damage award calculated by reasonable inference from

the evidence that they have offered.

15      **2.**    **DEFENDANTS HAVE ALSO FAILED TO MAINTAIN COMPLETE AND ACCURATE**

16               **RECORDS WITH RESPECT TO MEAL PERIODS, ENTITLING PLAINTIFFS TO**
             **DAMAGES FOR MISSED MEAL PERIOD EQUAL TO ONE HOUR OF PAY FOR**

17               **EACH DAY WORKED**

18       As stated earlier, 29 CFR § 516.2(a)(7) requires employer to keep records of daily hours

19  worked.  In addition, 29 C.F.R. § 785.19 provides that an only an undisturbed period of 30

20  minutes,  which is not counted as work-time, constitutes a bona fide meal period.  As such, the

21  combined effect of 29 CFR § 516.2(a)(7) and 785.19 requires that an employer "keep **records** of

22  when **meal** breaks were taken, whether they were interrupted, and when they were completed."

23  Bayles v. American Medical Response, 937 F. Supp. 1477, 1486 (D. Co. 1996) (citing Donovan

24  v. White Beauty View, Inc., 556 F. Supp. 414 (M.D.Pa. 1982), Donovan v. Bel-Loc Diner, Inc.,

25  780 F.2d 1113 (4th Cir. 1985), and Bingham v. Airport Limousine Service, 314 F. Supp. 565 (D.

---

**PLAINTIFFS' TRIAL BRIEF**
RAFFELAS, et al. v. BHULLAR et. al.
                   15           Case No.  C07-5244 HRL

1  Ark. 1970)).  Under FLSA, failure to comply with this requirement entitles Plaintiffs to the

2  relief. Id.

3      Here, Plaintiffs claim that they were not given the 30-minute required meal break

4  required for a 6-hour workday under Cal. Labor Code § 512 and Wage Order at 8 CCR § 11170,

5  subsection 9. As such, they are seeking meal period premiums equal to one hour of pay at the

6  regular rate of pay for each meal period not provided. Cal Labor Code § 226.7. Defendants have

7  failed to provide meal period records in compliance with the FLSA.  Absent such records, the

8  Court should find Defendants liable for one hour of pay for each day worked and award

9  Plaintiffs the relief sought. See Bearden v. U.S. Borax, Inc., 138 Cal. App. 4th 429 (2006).

10     **3.    PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES EQUAL TO OVERTIME
          PAY OWED**

11

12     FLSA §29 U.S.C. 216(b) mandates an award of liquidated damages for unpaid overtime.

13  King v Board of Education, 435 F2d 295 (1970). The only way to avoid this mandatory award

14  requires the employer to establish that both (i) its failure to pay required overtime is in good

15  faith, and (ii) it had reasonable ground to believe that his act or omission was not in violation of

16  FLSA. McClanahan v. Mathews,440 F2d 320 (1971).  In Service Employees Int'l Union, Local

17  102 v. County of San Diego, 784 F. Supp. 1503, 1507 (S. D. Cal. 1992), the court held that the

18  "FLSA provides that an employer who violates the minimum wage or maximum hour provisions

19  'shall be liable for . . . the payment of wages lost and an equal amount as liquidated damages'".

20  Citing 29 U.S.C. § 216(b). Furthermore, "[l]iquidated damages are not penal in nature, but

21  instead 'constitute compensation for the retention of a workman's pay which might result in

22  damages too obscure and difficult of proof  for estimate other than by liquidated damages. ......'

23  As a result, in a FLSA case, Double damages are the norm, single damages the exception." 784

24  F. Supp. 1503, 1507 (S. D. Cal. 1992), citing Watson v. United Consumers Club, Inc., 786 F.2d

25  303, 310 (7th Cir. 1986).

    Here, Defendants apparently cannot show that they acted in good faith, nor did they have

reasonable ground that they were not violating FLSA in failing to pay overtime. See Hertz

---

**PLAINTIFFS' TRIAL BRIEF**
RAFFELAS, et al. v. BHULLAR et. al.

                                16                  Case No.  C07-5244 HRL

1  Drivurself Stations, Inc. v United 150 F2d 923 (8th Cir. 1945) (Employer, who knowingly and

2  intentionally, as distinguished from accidentally, makes false record of hours worked by

3  employee, subject to provisions of Fair Labor Standards Act, is guilty of willful violation of Act,

4  even though he may have had no evil motive).  As such, Plaintiffs are entitled to liquidated

5  damages for unpaid overtime.

6      **4.      4-YEAR STATUTE OF LIMITATION APPLIES FOR RECOVERY OF MEAL
          PREMIUMS AND BOTH UNPAID OVERTIME AS RESTITUTION UNDER CAL.**

7          **BUSINESS & PROFESSIONS CODE § 17203.**

8          Business and Professions Code section 17200 prohibits three types of wrongful business

9  practices: any (1) unlawful, (2) unfair, or (3) fraudulent business practice or act. *See* People ex

10 rel. Bill Lockyer v. Fremont Life Ins. Co., 104 Cal.App.4th 508, 515 (2002). "With respect to the

11 *unlawful* prong, [v]irtually any state, federal or local law can serve as the predicate for an action

12 under section 17200." Id. (internal citation and quotation marks omitted). "'[I]n essence, an

13 action based on Business and Professions Code section 17200 to redress an unlawful business

14 practice 'borrows' violations of other laws and treats these violations, when committed pursuant

15 to a business activity, as unlawful practices independently actionable under section 17200 et seq.

16 and subject to the distinct remedies provided thereunder.'" Id. *quoting* Farmers Ins. Exchange v.

17 Superior Court, 2 Cal.4th 377, 383 (1992).

18         Any person harmed by such unfair practice is entitled to restitution. Business &

19 Professions Code §17203.  Restitution under §17203 is a distinct remedy, *cumulative* to remedies

20 under any other laws of California. Business & Professions Code §17205, see also Cortez v.

21 Purolater Air Filtration Products Company, 23 Cal.4th 163 (2000).

22         Plaintiffs' claim for restitution under Business & Professions Code §17203 in this case

23 allows for a four year statute of limitations. Business & Professions Code § 17208.  In Janik v.

24 Rudy, Exelrod & Zieff, 119 Cal. App. 4Th 930 (2004), Plaintiff's attorney, who had recovered

25 $90 million in an overtime class action, was sued for malpractice because he pursued only a

Labor Code claim that carried 3 year statue of limitations, but failed to pursue the Section 17200

---

**PLAINTIFFS' TRIAL BRIEF**
RAFFELAS, et al. v. BHULLAR et. al.
                              17              Case No.  C07-5244 HRL

claim, carrying a 4 year statue of limitations.  In reversing the trial court's order granting defendant's demurrer, on the ground that § 17203 only covers three years of the back overtime pay, the Court agreed with the plaintiff, and held that "if [a UCL claim] was not included as part of the … action the claim for an additional year of recovery was lost", id. at 943.  This interpretation was affirmed by the California Supreme Court in Cortez, 23 Cal.4th 163, at 179-80, specifically holding that any action pursuant to § 17203 carries a 4-year statute of limitations.  As such, Plaintiffs are entitled to recover up to four years of unpaid wages as restitution.

Furthermore, the meal period  premiums for missed meal breaks under Cal. Labor Code § 266.7 constitute wages see Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094 (April 16, 2007). As such, they too are subject to restitution under Section 17203 and Plaintiffs are entitled to recover premiums for up to four years of missed meal periods.

**5.    DEFENDANTS WILLFULLY FAILED TO PAY PLAINTIFFS ALL WAGES DUE UPON TERMINATION OF EMPLOYMENT AND THEREFORE PLAINTIFFS ARE ENTITLED TO 30 DAYS WAGES AS WAITING TIME PENALTIES UNDER CAL. LABOR CODE § 203**

California law requires the prompt payment of all wages due.  "Wages" include pay for all hours worked, including overtime pay. See Cal.Labor Code § 200(a).  If an employer fails to pay all wages due, California Labor Code § 203 requires payment of "waiting time penalties" to the affected employees:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days...
> Cal. Labor Code section 203.

Under Section 201, employees who are discharged must be paid all of their wages immediately, while employees who are laid off must be paid within seventy-two hours of the lay-off.  Under Section 202, employees who quit must be paid all of their wages within seventy-two hours of the

1  time of quitting. If the employer fails to pay all wages due within these time limits, the employee

2  is entitled to a full-day's wages for each day that passes until payment is made, up to the date of

3  filing of the complaint or 30 days, whichever is shorter.[3]

4      This language of Section 203, by use of the term "*shall*" regarding the payment of this

5  penalty, is mandatory. *See for language* <u>Cal. Labor Code §203</u> *and* <u>Cal. Labor Code §15</u>

6  (interpreting Seciton 203). As read by the Court, "Labor Code Section 15, one of the general

7  provisions governing the interpretation of specific sections of the Labor Code, explicitly declares

8  that 'shall' is "mandatory…" <u>Morris v. County of Marin</u>, 18 Cal.3d 901 (1977) .

9      In upholding the Constitutionality of the predecessor statute of Cal. Labor Code § 203,

10  the court held in <u>Moore v. Indian Spring, Etc. Min. Co.</u>, 37 Cal.App. 370, 380 (1918), "[t]he

11  intention of the penalty imposed…is to make it the interest of the employer to keep faith with his

12  employees and thus avoid injury to them and possible injury to the public at large." Furthermore,

13  Cal. Labor Code §§ 201-203 were enacted to promote California's public policy of requiring the

14  prompt payment of wages to workers. <u>In re Trombley</u>, 31 Cal.2d 801, 809 (1948); <u>Kerr's</u>

15  <u>Catering Service v. Department of Industrial Relations</u>, 57 Cal.2d 319, 326 (1962) .

16      "Willful" as used in the statute simply means that the employer failed to pay all wages

17  earned when due.  As used by courts:

18

19      [willful] does not necessarily imply anything blamable, or any malice or wrong toward
        the other party, or perverseness or moral delinquency, but merely that the thing done or
20      omitted to be done, was done or omitted intentionally.  It amounts to nothing more than
        this: that the person knows what he is doing, intends to do what he is doing, and is a free
21      agent.
    See <u>Davis v. Morris</u>, 37 Cal. App. 2d 269, 274 (1940).

22

23

24  _____
    [3]      The amount of the penalty per person will vary depending on the average daily rate of
25  pay at the time of each separation.  <u>Mamika v. Barka</u>, 68 Cal. App.4th 487 (1998).

1  "[T]o be at fault within the meaning of the statute, the employer's refusal to pay need not be

2  based on a deliberate evil purpose to defraud workmen of wages, which the employer knows to

3  be due.  As used in § 203, "willful" merely means that the employer intentionally failed or

4  refused to perform an act *which was required to be done*." (Emphasis, the court.) <u>Barnhill v.</u>

5  <u>Robert Saunders & Co.</u>, 125 Cal.App.3d 1, 7-8 (1918).

6       The evidence will show that, to date, the Plaintiffs have not been paid all wages due by

7  Defendants and that more than 30 days have passed since their separation from employment with

8  Defendants. Defendants failure to do so, by not keeping accurate records of Plaintiffs

9  employment, by making false and inaccurate records to avoid liability for overtime

10  compensation, and failing to remedy any of these defects at any point before or after Plaintiffs'

11  employment with Defendants, is clearly intentional. Therefore, pursuant to the legal standards

12  specified above, Defendants' failure to pay all wages due to Cesar was "willful." Accordingly, it

13  is mandatory that Defendants pay to Plaintiffs 30-days wages as waiting time penalties under

    Cal. Labor Code § 203.

14

15        **6.        Interest on Wages Due Must Be Awarded in Order to Prevent Defendants
               from Earning A Return on Funds Unlawfully Withheld From Plaintiffs.**

16       Plaintiffs are entitled to interest on lost overtime wages. Cal. Labor Code § 218.6

17  provides: "In any action brought for the nonpayment of wages, the court shall award interest on

18  all due and unpaid wages at the rate of interest specified in subdivision (b) of California Civil

19  Code section 3289, which shall accrue from the date that the wages were due and payable as

20  provided in Part 1 (commencing with Section 200) of Division 2."[4] See also <u>Espinoza V. Classic</u>

21  <u>Pizza, Inc.</u>, 114 Cal. App. 4th 968 (2003).

22

23

_____

24  [4]     Furthermore, Labor Code §1194 provides in part, an "…employee is entitled to recover
    in a civil action the unpaid balance of the full amount of his minimum wage or overtime

25  compensation, *including interest thereon*, reasonable attorneys' fees, and costs of suit."
    (Emphasis added).

**PLAINTIFFS' TRIAL BRIEF**
<u>RAFFELAS, et al. v. BHULLAR et. al.</u>

1    Accordingly, Plaintiffs should also be awarded interest on the full amount unpaid wages

2    at 10% per annum.

3    **7. DEFENDANTS ARE SUBJECT TO FLSA**

4    FLSA overtime requirement applies to any employee "who in any workweek …is

5    employed in an enterprise engaged in commerce or in the production of goods for commerce",

6    29 U.S.C. § 207(a)(1). An "enterprise engaged in commerce or in the production of goods for

7    commerce" is defined to mean, among other things, an enterprise whose annual gross volume of

8    sales …. is no less than $500,000." 29 U.S.C. § 203(s)(1)(ii). "Enterprise" means the related

9    activities performed (either through unified operation or common control) by any person or

10   persons for a common business purpose, and includes all such activities whether performed in

11   one or more establishments or by one or more corporate or other organizational units." 29

     U.S.C. 203(r)(1).

12   At trial, Plaintiffs will show DEfendnats' Happy Hollow Market's gross sales, at

13   minimum, border on, if not exceed, $500,000 a year. Evidence will show that at the relevant

14   times, Defendants own at least other two mini-markets similar to Happy Hollow Market. There

15   should be no dispute that Defendants, combining all sales from three market, exceed annual

16   gross of $500,000. Defendants are subject to FLSA overtime obligations.

17   **8. UNDER CALIFORNIA LAW, PLAINTIFFS' OVERTIME SHOULD BE MULTIPLIED BY 1.5
         MULTIPLIER**

18   

19   Mr. Bhullar's testimony and purported Plaintiffs' payroll records

20   compel an inescapable conclusion that Plaintiffs were paid a fixed salary.

21   Under Espinoza v. Classic Pizza Inc., 114 Cal.App.4th 968 (2003), an employer is liable for

22   overtime pay for any overtime hours worked by employee, even though there was an

23   understanding that the monthly salary was to cover both regular pay and overtime, *id.* at 974

24   (citing Ghory v. Al-Lahham, 209 Cal. App. 3d 1487 (1989). As such, Plaintiffs are entitled to

25   one and half of their "regular rate of pay" for each hour he worked in excess eight hours a day or

     forty hours a week. Cal. Wage Order 5-2001, §3(A).

1

### 9. PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES FOR UNPAID MINIMUM WAGE

2

3      California Labor Code §1194.2(a) provides that an employee "shall" be entitled to a

4   liquidated damages equal to the amount of the unpaid minimum wage, unless employer can

5   demonstrate to the satisfaction of the Court that (i) its failure to pay minimum wage was in good

6   faith, and (ii) it had reasonable basis to believe that its action was not a violation of any Labor

7   Code provisions, §1194.2(b).  Clearly, the Labor Code tracks the FLSA language for liquidated

8   damages.  Accordingly, the liquidated damages would be mandated in this case for unpaid

9   minimum wage under Labor Code § 1194.2(b).

### IV.    CONCLUSION

10

11      For all foregoing reasons, the Court should award Plaintiffs all relief sought.

12

13

Dated: September 2, 2008                                By: /s/ ADAM WANG

14                                                           Attorney for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

---

**PLAINTIFFS' TRIAL BRIEF**
RAFFELAS, et al. v. BHULLAR et. al.

22                         Case No.  C07-5244 HRL